O

UNITED  STATES  DISTRICT  COURT

FOR  THE  CENTRAL  DISTRICT  OF  CALIFORNIA

| | |
|---|---|
| HALLADAY & MIM MACK INC., | CASE NO. SACV 08-1138 AG (MLGx) |
| Plaintiff, | |
| v. | ORDER GRANTING MOTION TO DISQUALIFY |
| TRABUCO CAPITAL PARTNERS INC.; KURT M. SAXON; and DOES 1-10, | |
| Defendants. | |

This case concerns alleged theft and plagiarism of a real estate tract map.  Plaintiff Halladay & Mim Mack, Inc. ("Halladay") filed a motion for summary judgment concerning the counterclaim against it ("Motion for Summary Judgment"), and then Defendants Trabuco Capital Partners, Inc. and Kurt M. Saxon ("Defendants") filed a motion to disqualify "Michael J. Murtaugh and his firm, Murtaugh, Meyer, Nelson, and Treglia, LLP, as counsel for Plaintiff . . ." ("Motion to Disqualify").  (Mot. 1:20-24.)  The Motion to Disqualify is GRANTED as to Defendant Kurt M. Saxon ("Saxon") only.  The Court does not reach the merits of the Motion

1    for Summary Judgment.

2

3    **BACKGROUND**

4

5        In 2006, attorneys from the firm Murtaugh, Meyer, Nelson, and Treglia, LLP ("Murtaugh,
6    Meyer") represented Defendant Kurt M. Saxon ("Saxon") in a separate case.  This case was
7    entitled *Rilington Palazzo v. Saxon Engineering Services, Inc., et al.*, Riverside County Sup. Ct.
8    case no. RIC457274 (the "*Rilington* case").  The *Rilington* case was resolved in 2007.

9        In October 2008, Murtaugh, Meyer filed this lawsuit on behalf of Halladay against
10   Defendants, including Saxon, asserting claims for copyright infringement and breach of contract,
11   among other things.  Halladay alleges that Defendants failed to pay for Halladay's services
12   concerning a tract map, and that Defendants stole, copied, and plagiarized the tract map.
13   (Murtaugh Decl. ¶ 11.)

14       Defendants filed this Motion to Disqualify Murtaugh, Meyer as counsel for Halladay.  In
15   this Motion, Defendants argue that Murtaugh, Meyer should not be allowed to take a position
16   adverse to Saxon, its former client.

17

18   **PRELIMINARY MATTERS**

19

20       Halladay makes various evidentiary objections to the Declaration of Kurt M. Saxon
21   ("Saxon Declaration").  Halladay objects to paragraphs 3, 5, 7, 8, 9, and 10 on the following
22   grounds: "Vague and ambiguous; conclusory; lacks adequate foundation; fails to state how Mr.
23   Murtaugh has obtained confidential information or what the information is."  (Objections to
24   Decl. of Kurt M. Saxon ¶ 3, 5, 7, 8, 9, 10.)  Halladay also objects to Paragraphs 6, 11, 12, 13, 14,
25   and 15 on the following grounds: "Vague and ambiguous; conclusory; lacks adequate
26   foundation."  (Objections to Decl. of Kurt M. Saxon ¶ 6, 11, 12, 13, 14, 15.)

27       The Court did not rely on most of the evidence under objection.  But the Court did rely on
28   the evidence in paragraphs 3, 5, 7, and 9, so the Court addresses the admissibility of this

2

1  evidence.

2      Paragraph 3 of the Saxon Declaration states that, "Murtaugh is fully aware of [my] and

3  my firms' financial status and my ability to defend a lawsuit . . . ." Paragraph 5 of the Saxon

4  Declaration states, "[t]hrough Mr. Murtaugh's Staff and myself we agreed upon a litigation

5  strategy and each took part in negotiating a settlement in the *Rilington* matter. Mr. Murtaugh is

6  privy to my litigation philosophy and general opinions, emotions, and fears of litigation." The

7  information in paragraphs 3 and 5 is sufficiently specific. It is factual, not conclusory, and it is

8  based on Saxon's personal knowledge. Contrary to Halladay's assertions, Defendants identify

9  what confidential information was obtained. In paragraph 3, they point to Saxon's "financial

10  status and . . . ability to defend a lawsuit." And in paragraph 5, they identify Saxon's "litigation

11  philosophy and general opinions, emotions, and fears of litigation." Finally, Defendants have

12  shown *how* this information was obtained by providing evidence that Murtaugh, Meyer

13  represented Saxon in the *Rilington* matter. (Saxon Decl. ¶ 2.)  Thus, the objections to paragraph

14  3 and 5 are OVERRULED.

15      Paragraphs 7 and 9 concern liability training that Murtaugh conducted with Saxon

16  separate from the *Rilington* case. Paragraph 7 states, "Murtaugh conducted extensive liability

17  training for my company and I. Mr. Murtaugh came to my office and met with all my employees

18  and project managers. While conducting this training he received confidential information

19  regarding myself and my business practices." (Saxon Decl. ¶ 7.) Paragraph 9 states that the

20

21      "scope of the liability training included, but was not limited to: 1) how work was
        performed and how documentation and correspondence pertaining to the work
22      performed and projects were kept; [2]) how contracts were drafted, presented and
        stored; [3]) how documentation of changes to project plans were handled, stored
23      and cataloged; [4]) and how client and consultant interactions were documented
        and handled."
24

25  (Saxon Decl. ¶ 9.)  These paragraphs are specific, factual, and based on Saxon's personal

26  knowledge. The objections to paragraphs 7 and 9 are OVERRULED.

27

28

**LEGAL STANDARD**

A court's authority "to disqualify an attorney derives from the power inherent in every court '[t]o control in furtherance of justice, the conduct of its ministerial officers.'" *City and Coutny of San Francisco v. Cobra Solutions, Inc.*, 38 Cal.4th 839, 846 (2006) (quoting *People ex rel. Dept. of Corps. v. SpeeDee Oil Change Sys., Inc.*, 20 Cal.4th 1135, 1145 (1999)); Cal. Code Civ. Proc., § 128, subd. (a)(5). If a potential conflict of interest arises from a lawyer's successive representation of clients with adverse interests, "the chief fiduciary value jeopardized is that of client *confidentiality*." *Flatt v. Superior Court*, 9 Cal.4th 275, 283 (1994) (emphasis in original).

Under the California Rules of Professional Conduct, a lawyer "shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment." Cal. Rules of Prof'l Conduct 3-310(E). A party "may seek to disqualify [its] former attorney from representing an adverse party by showing that the former attorney possesses confidential information adverse to the former client." *Henriksen v. Great Am. Savings & Loan*, 11 Cal.App.4th 109, 113 (1992). Such a showing is sufficient to grant a motion for disqualification. *See id.* at 114 ("We need not dwell on the elements of the 'substantial relationship' test for in this case there is no dispute that [the former attorney] in fact acquired confidential information during his . . . representation of [the former client] . . . .").

If "an attorney is disqualified because he formerly represented and therefore possesses confidential information regarding the adverse party in the current litigation, vicarious disqualification of the entire firm is compelled as a matter of law." *Flatt*, 9 Cal.4th at 283. Generally, an "ethical wall" between attorneys with confidential information and their firms will "not preclude the disqualification of the firm." *Meza v. H. Muehlstein & Co.*, 176 Cal.App.4th 969, 979 (August 18, 2009). But it might preclude disqualification of an entire firm in circumstances not present here, such as where an attorney that formerly represented a client later

4

1    joins a firm with a position adverse to the client.  *See In re County of Los Angeles*, 223 F.3d 990,

2    996 (9th Cir. 2000) ("The vicarious disqualification of an entire firm can work harsh and unjust

3    results, particularly in today's legal world where lawyers change associations more freely than in

4    the past. . . .  An automatic disqualification rule would make firms be understandably more

5    reluctant to hire mid-career lawyers, who would find themselves cast adrift as 'Typhoid Marys,'

6    and clients would find their choice of counsel substantially diminished, particularly in

7    specialized areas of law.").

8

9    <u>ANALYSIS</u>

10

11    **1.**      **WHETHER MURTAUGH, MEYER OBTAINED DEFENDANTS'**

12           **CONFIDENTIAL INFORMATION**

13

14        Defendants argue that Murtaugh, Meyer should be disqualified because it obtained

15    Defendants' confidential information in the *Rilington* case.  To support this argument,

16    Defendants claim that Murtaugh, Meyer has been "exposed to Saxon's litigation philosophy,

17    organizational structure, the financial impact of pending claims and the existence and amounts of

18    insurance coverage . . . ."  (Reply 2:4-8.)  The Court agrees with Defendants.

19        Under California law, the information that was disclosed to Murtaugh, Meyer in the

20    *Rilington* case is confidential and material.

21

22        "[C]onfidential information includes information concerning similar matters which
          would be useful to the current client in pressing its current claim, including the

23        identity of all the key decision makers, the litigation philosophy, and the
          organizational structure of the past client, the financial impact of pending . . .

24        claims against the client, and the existence and amount of insurance coverage."
          *Jessen v. Hartford Casualty Ins. Co.*, 111 Cal.App.4th 698, 713 (2003) (citation

25        and quotation marks omitted).

26

27    Here, it is undisputed that Murtaugh, Meyer previously represented Saxon and obtained

28    information about the existence and amount of Saxon's insurance coverage.  Further, Defendants

1   establish that they told Murtaugh, Meyer Saxon's litigation philosophy and financial ability to

2   pay a judgment.  (*See* Saxon Decl. ¶ 3, 5.)  They also show that Murtaugh, Meyer obtained

3   confidential information about Saxon while conducting training for his company.  (*See* Saxon

4   Decl. ¶ 7, 9.)  Defendants argue that Murtaugh, Meyer's knowledge of this information should

5   preclude the firm from opposing Defendants in this case.

6          Halladay does not accept Defendants' argument quietly.  Halladay argues that Murtaugh,

7   Meyer "has not obtained confidential information material to the current dispute," and provides

8   the Declaration of Michael J. Murtaugh to support its argument.  (Opp'n 3:8-9.)  There is no

9   reason to disbelieve Murtaugh's factual statements in his declaration.  But the facts Halladay

10  offers are simply insufficient to defeat the Motion to Disqualify.

11         First, Michael J. Murtaugh ("Murtaugh") states that he "requested the particulars of the

12  [confidential] information that [Murtaugh, Meyer] supposedly ha[s], and received nothing."

13  (Murtaugh Decl. ¶ 3.)  Even if this is true, a former client does not need to divulge the particular

14  confidential information that was disclosed.  "That inquiry would be improper as requiring the

15  very disclosure the rule is intended to protect. . . .  The inquiry is for this reason restricted to the

16  scope of the representation engaged in by the attorney."  *Trone v. Smith*, 621 F.2d 994, 999 (9th

17  Cir. 1980) (citation omitted).

18         Second, Murtaugh also states that he, personally, has no information concerning Saxon's

19  finances, Saxon's current professional liability policy, or Saxon's company policies.  (Murtaugh

20  Decl. ¶ 10.)  But Murtaugh, Meyer must still be disqualified since one of its other attorneys has

21  learned Defendants' confidential information.  The rules of disqualification apply "not only to

22  the individual attorney.  Confidential information possessed by one attorney may or may not

23  have been shared with other members of the firm, but the firm as a whole is disqualified whether

24  or not its other members were actually exposed to the information."  *Trone*, 621 F.2d at 999.

25         Finally, Halladay establishes that Murtaugh, Meyer has not obtained information

26  "regarding Saxon's . . . obtaining or plagiarizing of the Halladay Tract Map . . . ."  (Opp'n 5:11-

27  14; Enright Decl. ¶ 1-4.)  Though this is true, confidential information includes more than

28  information concerning the merits of a particular case.  Rather, it includes information about

1    litigation philosophy, financial status, and insurance coverage.  *Jessen*, 111 Cal.App.4th at 713.

2        Here, the Court credits Saxon when he says that Murtaugh, Meyer became familiar with

3    his confidential information.  *Id.*  This information might give Halladay an unfair advantage over

4    Defendants stemming from Murtaugh, Meyer's prior representation of Saxon.  For example,

5    knowledge of Saxon's financial and insurance information might allow Murtaugh, Meyer to ask

6    for more in settlement than they would without this information.  Further, Murtaugh, Meyer

7    might know whether Defendants are risk averse, and whether their initial offers to settle are

8    close or far from their bottom line number.  Though Defendants cannot prove that Murtaugh,

9    Meyer would actually use Saxon's confidential information, "[i]t is the possibility of the breach

10   of confidence, not the fact of the breach, that triggers disqualification."  *Trone*, 621 F.2d at 999.

11       The Court also finds that the confidentiality of Saxon's information is heightened here

12   since Murtaugh, Meyer represented Saxon a mere two years before the current litigation

13   commenced.  (*See* Saxon Decl. Ex. A.)  If the prior representation was far more remote in time,

14   the information obtained by Murtaugh, Meyer might not be material to this case.  But under the

15   circumstances here, the Court finds that Defendants have established that Murtaugh, Meyer has

16   obtained material confidential information.

17

18

19   **2.    WHETHER THE MOTION TO DISQUALIFY IS BARRED BY THE DOCTRINE**

20   **OF LACHES**

21

22       Halladay argues that the Motion to Disqualify should be barred by the doctrine of laches.

23   More specifically, Halladay contends that "Saxon became aware that the Murtaugh firm was

24   representing Halladay in August 2008," but did not raise the issue of disqualification until June

25   2009.  (Opp'n 13:1-5.)  The Court finds Halladay's argument unpersuasive.

26       Even if an attorney possesses a former client's confidential information, a motion to

27   disqualify the attorney will be denied if there has been "unreasonable delay by the former client

28   in making a motion and resulting prejudice to the current client."  *See River West, Inc. v. Nickel*,

1   188 Cal.App.3d 1297, 1309 (1987).  If a party opposing disqualification shows unreasonable

2   delay and resulting prejudice, "[t]he burden then shifts back to the party seeking disqualification

3   to justify the delay."  *Id.*

4

5       That party should address: (1) how long it has known of the potential conflict; (2)
        whether it has been represented by counsel since it has known of the potential

6       conflict; (3) whether anyone prevented the moving party from making the motion
        earlier, and if so, under what circumstances; and (4) whether an earlier motion to

7       disqualify would have been inappropriate or futile and why.

8

9   *Id.*

10      Here, Defendants have established that their delay was not unreasonable.  They admit that

11  they knew of the potential conflict since August 2008.  (Saxon Reply Decl. ¶ 1.)  But they

12  provide evidence that they raised the potential conflict with Halladay at that time.  (Saxon Reply

13  Decl. ¶ 1.)  Defendants also establish that their first attorneys in this action, who have since been

14  replaced, only represented them for five months and ignored Saxon's instructions "to object to

15  Murtaugh's representation of Halladay."  (Saxon Reply Decl. ¶ 2.)  And finally, Defendants

16  demonstrate that their current counsel promptly filed the Motion to Disqualify after becoming

17  associated with this case.  (Geraci Decl. ¶¶ 2-7.)

18      Further, the two principal cases cited by Halladay are distinguishable.  In *Trust Corp. of*

19  *Montana v. Piper Aircraft Corp.*, the party moving to disqualify waited two and a half years

20  after the filing of the lawsuit to make its motion.  701 F.2d 85, 87-88 (9th Cir. 1983).  And in

21  *River West*, the party moving to disqualify had notice of the conflict over three years before a

22  motion to disqualify was brought.  188 Cal.App.3d at 1308.  Here, Defendants moved to

23  disqualify Murtaugh, Meyer less than a year after they were on notice of the conflict.

24      Accordingly, Defendants' Motion to Disqualify is not barred by the doctrine of laches.

25

26  **DISPOSITION**

27

28      The Court GRANTS the Motion to Disqualify as to Saxon only and without prejudice to

8

1   Defendant Trabuco Capital Partners, Inc. filing a separate motion to disqualify.  The Court does

2   not reach the merits of the Motion for Summary Judgment.

3

4   IT IS SO ORDERED.

5   DATED: October 5, 2009

6

7   _____

8                    Andrew J. Guilford
                 United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28